UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RALPH CHIAO,<br><br>           Plaintiff,<br><br>-against-<br><br>DISCOVERY, INC., DAVID ZASLAV, ROBERT MIRON, ROBERT BECK, ROBERT BENNETT, PAUL GOULD, ROBERT JOHNSON, KENNETH LOWE, JOHN MALONE, STEVEN MIRON, DANIEL SANCHEZ, SUSAN SWAIN, J. DAVID WARGO,<br><br>           Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ralph Chiao ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Discovery, Inc. ("Discovery" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Discovery, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed combination (the "Proposed Transaction") of Discovery with WarnerMedia ("WarnerMedia"), a subsidiary of AT&T that will be separated from AT&T and then merged with Discovery in the Transaction.

2. On May 17, 2021, Discovery entered into an Agreement and Plan of Merger (the

1

"Merger Agreement"), pursuant to which Company shareholders will own approximately 29% of the outstanding shares of the combined entity. Upon completion of the Transaction, WarnerMedia will become a subsidiary of "Warner Bros. Discovery" (formerly known as Discovery). Discovery common stock will no longer be publicly traded after consummation.

3. On November 18, 2021, to convince Discovery shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Registration Statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Discovery and WarnerMedia; and (ii) the valuation analyses performed by Discovery's dual financial advisors, Allen & Company LLC ("Allen & Company") and J.P. Morgan Securities LLC ("J.P. Morgan") in support of the fairness opinion.

5. The special meeting of Company shareholders to vote on the Proposed Transaction (the "Shareholder Vote") is forthcoming, at a time to be determined. It is therefore imperative that the material information that has been omitted from the Proxy be disclosed prior to the Shareholder Vote so Plaintiff can properly exercise his corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction until the material information identified herein is disclosed to Discovery shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Transaction is consummated without remedial disclosure, to recover damages resulting from Defendants' violations.

## JURISDICTION AND VENUE

7.  This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.  Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

9.  Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391 because Defendants are found in or inhabit or transact business in this District. Indeed, Discovery common stock trades on the NASDAQ, which is headquartered in this District, and hired J.P. Morgan and Allen & Company as financial advisors, all of whom are located in this District, rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10. Plaintiff is, and at all relevant times has been, a holder of Discovery, Inc. common stock.

11. Defendant Discovery, Inc. is a Delaware corporation with principal executive offices

located at 230 Park Avenue South, New York, New York 10003. Its common stock trades under the ticker symbols "DISCA", "DISCB", and "DISCK".

12. Individual Defendant David Zaslav is, and has been at all relevant times, Discovery's President and Chief Executive Officer. He is also a director of Discovery.

13. Defendant Robert Miron is, and has been at all relevant times, the Chairman of the Board.

14. Defendant Robert Beck is, and has been at all relevant times, a director of Discovery.

15. Defendant Robert Bennett is, and has been at all relevant times, a director of Discovery.

16. Defendant Paul Gould is, and has been at all relevant times, a director of Discovery.

17. Defendant Robert Johnson is, and has been at all relevant times, a director of Discovery.

18. Defendant Kenneth Lowe is, and has been at all relevant times, a director of Discovery.

19. Defendant John Malone is, and has been at all relevant times, a director of Discovery.

20. Defendant Steven Miron is, and has been at all relevant times, a director of Discovery.

21. Defendant Daniel Sanchez is, and has been at all relevant times, a director of Discovery.

22. Defendant Susan Swain is, and has been at all relevant times, a director of Discovery.

23. Defendant J. David Wargo is, and has been at all relevant times, a director of Discovery.

24. The Individual Defendants referred to in ¶¶ 12-23 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with Discovery, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.  Company Background and the Proposed Transaction.**

25. Discovery is a global media company that provides content across multiple distribution platforms, including platforms such as pay-television ("pay-TV"), free-to-air and broadcast television, authenticated GO applications, digital distribution arrangements, content licensing arrangements and next generation direct-to-consumer ("DTC") subscription products,

including discovery+.

26. As of December 31, 2020, Discovery provided original and purchased content and live events to approximately 3.7 billion cumulative subscribers and viewers worldwide through networks that it wholly or partially owns. Discovery distributes customized content in the United States and over 220 other countries and territories in nearly 50 languages, and has an extensive content library.

27. On May 17, 2021, Discovery and AT&T issued a joint press release announcing the proposed transaction, which stated in relevant part:

### AT&T's WARNERMEDIA AND DISCOVERY, INC. CREATING STANDALONE COMPANY BY COMBINING OPERATIONS TO FORM NEW GLOBAL LEADER IN ENTERTAINMENT

Dallas, TX and New York, NY – May 17, 2021. AT&T Inc. (NYSE:T) and Discovery, Inc. (NASDAQ: DISCA, DISCB, DISCK) today announced a definitive agreement to combine WarnerMedia's premium entertainment, sports and news assets with Discovery's leading nonfiction and international entertainment and sports businesses to create a premier, standalone global entertainment company.

Under the terms of the agreement, which is structured as an all-stock, Reverse Morris Trust transaction, AT&T would receive $43 billion (subject to adjustment) in a combination of cash, debt securities, and WarnerMedia's retention of certain debt, and AT&T's shareholders would receive stock representing 71% of the new company; Discovery shareholders would own 29% of the new company. The Boards of Directors of both AT&T and Discovery have approved the transaction.

28. The stake of Warner Bros. Discovery that will be received by Discovery shareholders represents inadequate compensation for their shares in Discovery. It is therefore imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Transaction.

**II.     The Proxy Omits Material Information**

29.     On November 18, 2021, Defendants filed the materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Transaction.

30.     To start, the Proxy fails to disclose material information regarding the financial projections disclosed for Discovery and WarnerMedia. For the Discovery Management Projections and WarnerMedia Projections, the Proxy fails to disclose (i) Net Income; and (ii) the line items, inputs, and assumptions for all of the disclosed figures.

31.     The Proxy additionally summarizes several analyses of Discovery's value without an adequate level, leaving shareholders materially uninformed.

32.     With respect to the *Selected Public Companies Analysis*, which was used to prepare a sum-of-the-parts valuation of Discovery and WarnerMedia's "traditional", "direct-to-consumer", and "corporate" segments, the Proxy fails to disclose (i) all of the metrics used to study the identified companies; (ii) the figures observed for each of these observed metrics; (iii) the multiples calculated for each studied company based on these metrics and figures; and (iv) the mean and median figures for the multiples studied.

33.     Further, although the Proxy states that Discovery's advisors reviewed May 14, 2021 enterprise values ("EV") as a multiple of 2022 EBITDA (in the case of one set of "traditional" companies) and EV as a multiple of 2024 estimated revenue (for the two "direct-to-consumer" companies studied), the Proxy alludes to "other information" that was also observed. (Proxy p. 199).

This raises the question of whether alternative multiples were studied but set aside to avoid arriving at a higher valuation for the Company, justifying the disclosure of this "other" data.

34. Additionally, the Proxy fails to explain why the advisors ultimately selected a multiples range of 6.5x to *7.5x* for 2022 EBITDA for Discovery even though the actual, observed multiple range for the traditional companies was 6.4x to *20.6x*. ***This drastic cut to nearly the entirety of the observed range needs to explained.*** The similar reduction to the multiples range for 2024 revenue – from 4.3x-5.3x to 4.0x-5.0x – should be clarified as well, since it once again resulted in a multiples range that valued Discovery at a lower level than the actual observed data. Any assumptions used in preparing and reducing the multiples applied to Discovery's business segments in this analysis should thus be disclosed.

35. Notably too, and again justifying further disclosure, Discovery's advisors used a higher multiples range for 2022 EBITDA to value WarnerMedia's traditional business. The rationale for selecting a multiples range of 8.0x to 10.0x for WarnerMedia in this part of the analysis (in contrast to Discovery's relatively low 6.5x to 7.5x) should thus be disclosed.

36. The Proxy also fails to break down how much of each company's 2022 EBITDA (or 2024 revenue) was treated as traditional, direct-to-consumer, or corporate. Since the line items for these figures are not provided in the forecasts as presently disclosed, the reliability of this analysis cannot be evaluated by Company shareholders.

37. For the *Discounted Cash Flow Analyses* of Discovery and WarnerMedia, the summary fails to disclose the weighted average cost of capital calculation method used, whether any outstanding cash was factored into the analysis, and the specific inputs and assumptions underlying the disclosed figures. Moreover, because J.P. Morgan arrived at an aggregate equity value $2.5 billion (or 8.1%) lower than Allen & Company's valuation despite using the same low-end figures as far as is presently

7

disclosed, the information needed to understand this divergence must be clarified.

38. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to cast an informed vote regarding the proposed transaction, and is thus threatened with irreparable harm, warranting immediate corrective disclosure and the injunctive relief sought herein.

## COUNT I
### Against All Defendants for Violations of Section 14(a) of the Exchange Act

39. Plaintiff reiterates each and every allegation set forth above as if fully set forth herein.

40. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

43. Defendants issued the Proxy with the intention of soliciting the Company's common

8

shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections; and (ii) valuation analyses performed by Discovery's financial advisors.

44. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

45. The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

46. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Discovery's financial advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by the advisors, as well as their fairness opinion and the assumptions made and matters considered in connection therewith.

47. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the merger agreement. The Individual Defendants knew or were negligent in not knowing that the material information

identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

48. The Individual Defendants were each required to review the financial advisors' analyses in connection with their receipt of the fairness opinion, question the financial advisors as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there were no material misstatements or omissions.

49. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders that contains materially false or misleading statements or omits a material fact constitutes negligence. The Individual Defendants were negligent, as Company directors, in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon review.

50. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of the Company's financial projections. Discovery is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

51. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of the right to cast an informed vote on the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

//

**COUNT II**
**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

52. Plaintiff reiterates each and every allegation set forth above as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of Discovery within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and is therefore presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

56. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of Company shareholders to vote on the Proposed Transaction or consummating the Proposed Transaction, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

//
//

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 6, 2021　　　　　　　　　　**MONTEVERDE & ASSOCIATES PC**

　　　　　　　　　　　　　　　　　　　　　*/s/ Juan E. Monteverde*
　　　　　　　　　　　　　　　　　　　　　Juan E. Monteverde (JM-8169)
　　　　　　　　　　　　　　　　　　　　　The Empire State Building
　　　　　　　　　　　　　　　　　　　　　350 Fifth Avenue, Suite 4405
　　　　　　　　　　　　　　　　　　　　　New York, NY 10118
　　　　　　　　　　　　　　　　　　　　　Tel: (212) 971-1341
　　　　　　　　　　　　　　　　　　　　　Fax: (212) 202-7880
　　　　　　　　　　　　　　　　　　　　　Email: jmonteverde@monteverdelaw.com

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*